UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**WESLEY K. GROOMS**                                                        **PLAINTIFF**

**V.**                                                   **CIVIL ACTION NO. 1:10CV175-A-D**

**CLYDE V. SAINT, KEYSTONE**
**AUTOMOTIVE INDUSTRIES, INC.,**                                   **DEFENDANTS**

**MEMORANDUM OPINION**

Before the Court is Plaintiff's Motion to Remand [10] and Defendants' Motion for Leave to File Surrebuttal [16]. After reviewing the motions, responses, rules, and authorities, the Court finds as follows:

**I. BACKGROUND**

On February 5, 2010, Plaintiff, Wesley Grooms, sued Defendants in the Circuit Court of Prentiss County, Mississippi, alleging negligence and negligence per se after Grooms was injured when struck by a vehicle owned by Keystone Automotive Industries and driven by Keystone employee, Clyde Saint, allegedly during the course and scope of Saint's employment. Defendants filed a notice of removal on July 15, 2010, claiming diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff subsequently filed a Motion to Remand on July 19, 2010. Plaintiff does not contest the fact that the requirements of diversity jurisdiction, i.e., complete diversity of citizenship and an amount in controversy in excess of $75,000, appear to be met. Rather, Plaintiff contends that the case should be remanded on the basis that Defendants' removal was untimely under 28 U.S.C. § 1446(b).

**II. REMOVAL AND REMAND STANDARD**

Federal courts are courts of limited jurisdiction. Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1, 665 F.2d 594, 595 (5th Cir. 1982). The Judiciary Act of 1789 provides that "any civil action brought in a State court of which the districts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This Court also has original jurisdiction when "the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a); Addo v. Globe Life and Accident Ins. Co., 230 F.3d 759, 761 (5th Cir. 2000).

Once a motion to remand is filed, the burden falls on the party seeking to maintain this Court's removal jurisdiction to show that the requirements for removal have been met. De Aguilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir. 1995). After removal of a case, the plaintiff may move for remand, and "[i]f it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Fifth Circuit has held that the removal statutes are to be construed "strictly against removal and for remand." Eastus v. Blue Bell Creameries, L.P., 97 F.3d 100, 106 (5th Cir. 1996); Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L .Ed. 1214 (1941).

Section 1446(a) of the removal statutes answers the question of *how* removal is accomplished, stating that a defendant may remove any "civil action" by filing a notice of removal, signed pursuant to the good faith requirements of Federal Rule of Civil Procedure 11, which contains "a short and plain statement of the grounds for removal." 28 U.S.C. §

1446(a). Section 1446(b) then answers the question of *when* an action is removable, setting forth the preconditions for removal in two types of cases: (1) those removable on the basis of an initial pleading; and (2) those that later become removable on the basis of "a copy of an amended pleading, motion, order or other paper." § 1446(b).  Regardless of the type of case, a defendant must remove within thirty days of receiving the document that provides the basis for removal. § 1446(b).

### III. ANALYSIS AND DISCUSSION

*Motion to File Surrebuttal*

On July 29, 2010, Defendants' filed a Motion for leave to file a surrebuttal brief in opposition to Plaintiff's remand motion.  Defendants' claim that this surrebuttal is made in good faith, not for the purpose of delay, and necessary because Plaintiff made new arguments for the first time in his rebuttal memorandum in support of remand.  The Court finds that Defendants' motion to file a surrebuttal brief is well taken and will not prejudice the Plaintiff.  As such, the motion shall be granted, and the surrebuttal brief, which Defendants have already filed, will be considered as the Court decides the instant motion.

*Motion to Remand*

Plaintiff argues that Defendants' notice of removal was untimely under 28 U.S.C. § 1446(b). Section 1446(b) provides,

> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

Plaintiff makes several arguments as to why Defendants' notice of removal is untimely. Specifically, Plaintiff contends that (1) Defendants should have ascertained that Plaintiff's claims were removable from Plaintiff's pre-suit compromise package and from the original complaint; (2) Plaintiff's compromise package and the numerous letters sent between the parties constitute "other paper" so as to trigger the thirty-day period for removal; and (3) Defendants have waived their right to remove by defending this action in state court.

A. Removal Based on the Initial Pleading

In Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir. 1992), the Fifth Circuit held that the thirty-day removal period under the first paragraph of § 1446(b) is triggered "only when the [initial] pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." The Fifth Circuit added that it intended to adopt a "bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount." Id. The court intended the "bright line" rule to obviate the need for protective removals, and to relieve the district courts from having to expend limited resources attempting to discern what defendants knew or should have known had they exercised due diligence. See id.

Ten years after Chapman, the Fifth Circuit, in Bosky v. Kroger Texas, LP, 288 F.3d 208, 210 (5th Cir. 2002), echoed Chapman's "bright line" rule, but then went on to comment that the court had "since [Chapman] held that specific damage estimates that are less than the minimum jurisdictional amount, when combined with other unspecified damage claims, can provide sufficient notice that an action is removable so as to trigger the time limit for filing a notice of removal." Further, the Bosky court contrasted the "key language" in the first and second paragraphs of Section 1446(b) as follows:

> "Setting forth," the key language of the first paragraph, encompasses a broader range of information that can trigger a time limit based on notice than would "ascertained," the pivotal term in the second paragraph . . . . The latter, in contrast to the former, seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally.

Id. at 211. In this case, Plaintiff appears to argue that the Fifth Circuit's decision in Chapman is either overruled or abrogated in light of Bosky. As such, the Court discusses whether Chapman is still controlling. At the outset, the Court acknowledges that Bosky's expansive language regarding the first paragraph of § 1446(b) initially appears difficult to reconcile with Chapman's rule that the initial pleading must affirmatively reveal on its face that damages are in excess of $75,000. See Capturion Network, LLC v. Daktronics, Inc., 2009 WL 1515026, at *6 (S.D. Miss. May 29, 2009) ("courts in this circuit now find themselves between the proverbial rock (Chapman) and hard place (Bosky) when faced with issues concerning the 30-day clock in the first paragraph of Section 1446(b)). However, the Court finds that a careful reading of Bosky and Chapman together reveals that Chapman's rule still controls.

The two cases cited by Bosky, Marcel v. Pool Co., 5 F.3d 81, 82-85 (5th Cir. 1993) and De Aguilar v. Boeing Co., 47 F.3d 1404, 1408-12 (5th Cir. 1995), to support the seeming

5

withdrawal from Chapman's bright line rule focused on whether the amount in controversy satisfied the jurisdictional requirement, not the timeliness of removal. Bosky itself even acknowledged that removal under the first paragraph of Section 1446(b) was not at issue in that case. Bosky, 288 F.3d at 209-10. Further, Bosky did not expressly overrule Chapman or give any indication that it intended to do so; instead, the Bosky court quoted and embraced Chapman's language that it is a "better policy" to require a "specific allegation" in order to trigger the thirty-day removal period from the initial pleading. Id. at 208. Moreover, as noted by the court in Capturion Network, "even if Bosky had intended to overrule or abrogate Chapman, it is not clear that the three-judge panel had the authority to do so[,] [as] [t]he Fifth Circuit has long recognized that one panel cannot overturn the decision of a previous panel." 2009 WL 1515026, at *6; see also Cent. Pines Land Co. v. United States, 274 F.3d 881, 893 (5th Cir. 2001) ("It is well-established in this circuit that one panel of this Court may not overrule another."); Montesano v. Seafirst Commercial Corp., 818 F.2d 423, 425-26 (5th Cir. 1987) ("one panel cannot overturn another panel, regardless of how wrong the earlier panel decision may seem to be."); Tex. Refrigeration Supply v. FDIC, 953 F.2d 975, 983 (5th Cir. 1992) ("Heretofore, this circuit has carefully abided by the well-tested maxim that one panel of this court cannot overrule another, even if it disagrees with the prior panel's holding."). As such, the Court sees no reason to retreat from Chapman's unambiguous "bright line" rule.[1]

---

[1] In November 2009, this Court discussed the fact that district courts are split on what Chapman requires in order for the thirty-day period to begin running from service of the initial pleading; however, the Court declined to decide which line of cases is more persuasive as the question never became an issue in the case. See Reed v. Flores, 2009 WL 3766693, at *2 n.1 (N.D. Miss. Nov. 10, 2009). To be clear, the Court in this instance is also declining to address *exactly* what Chapman requires in order for an initial pleading to

Here, Plaintiff's Complaint does not contain an allegation that his damages exceed the federal jurisdictional minimum, nor does it contain any specific damages estimate. Further, the allegations themselves in the Complaint, that Plaintiff was "seriously injured," do not affirmatively put Defendants' on notice that Plaintiff is seeking an excess of the jurisdictional minimum. Plaintiff contends that its June 17, 2009 pre-suit compromise package should have put Defendants on notice that they were asking in excess of $75,000 since Plaintiff's pre-suit settlement offer was for $650,000. However, the Court finds that this *pre-suit* compromise package does not suffice under Chapman to "affirmatively reveal" from the "face" of the "initial pleading" that Plaintiff was seeking more than $75,000. Plaintiff's argument is very similar to the one made in Chapman. In Chapman, the Fifth Circuit disagreed with the district court, which had held that the defendant failed to timely remove a case where the defendant had previously received the plaintiff's medical bills and records revealing sums owed in excess of the minimum jurisdictional amount imposed by 28 U.S.C. § 1332. 969 F.2d at 163. Here, as in Chapman, the fact that the Defendants' insurance adjuster previously received a settlement package does not affirmatively reveal that Plaintiff was seeking more than the jurisdictional amount needed. Therefore, Plaintiff's state court

---

"affirmatively reveal" an excess of the jurisdictional minimum. Some courts require that an initial pleading allege an exact dollar amount, see Staton v. Wells Fargo Bank, N.A., 192 F. Supp. 2d 681, 683-84 (N.D. Tex. 2002), whereas other courts do not require a specific dollar amount, as long as the allegations themselves would put a defendant on notice of an excess of $75,000, see Stone v. Nirvana Apts., 2008 WL 4844715 (W.D. Tex. Oct. 17, 2008). Here, the Court is only holding Chapman to be controlling in light of Bosky, in that an initial pleading must "affirmatively reveal on its face" an excess of $75,000. In this instance, the Court finds that the allegations in Plaintiff's Complaint do not "affirmatively reveal" an excess of the jurisdictional limit. Further, it is undisputed that Plaintiff failed to allege a dollar amount in his Complaint.

Complaint did not initiate the thirty-day clock under the first paragraph of Section 1446(b) as to make Defendants' notice of removal untimely.

B. "Other Paper" Removal

Having determined that Defendants' removal was not procedurally defective under the first paragraph of § 1446(b), the Court now turns to the statute's second paragraph. While Chapman set a bright line rule for the timeliness of removal under the first paragraph of Section 1446(b), Bosky set its own bright line rule for the thirty-day removal period under the second paragraph of Section 1446(b). The court in Bosky held that,

> The Chapman measure of the "affirmatively reveals on its face" standard does not apply to the second paragraph of section 1446(b), but rather the information supporting removal in a copy of an amended pleading, motion, order or other paper must be "unequivocally clear and certain" to start the time limit running for a notice of removal under the second paragraph of section 1446(b). This clearer threshold promotes judicial economy. It should reduce "protective" removals by defendants faced with an equivocal record. It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts. In short, a bright-line rule should create a fairer environment for plaintiffs and defendants.

Bosky, 288 F.3d at 211 (footnote omitted).[2] The second paragraph of Section 1446(b) requires that jurisdiction be established by "an amended pleading, motion, order, or other

---

[2] There is a seeming dichotomy created by Chapman and Bosky. As implicitly recognized by Bosky, Chapman's bright line "specific allegation" requirement can be read to be more restrictive than the preponderance of the evidence standard utilized by the Fifth Circuit to determine the amount in controversy for purposes of diversity jurisdiction. See, e.g., De Aguilar v. Boeing Co., 47 F.3d 1404, 1408-12 (5th Cir. 1995). While Bosky seemed to lower the requirements under the first paragraph of § 1446(b), the Bosky court then proceeded to create an even higher standard to prompt the removal clock under the second paragraph of § 1446(b), noting that the information supporting removal must be "unequivocally clear and certain." As result of this, a defendant may be able to establish by a preponderance of the evidence that the amount in controversy exceeds § 1332's mandate, even though the thirty-day removal clock will still not be triggered under Chapman or Bosky's standards.

paper." § 1446(b). The first three items on this list are reasonably self-explanatory. What constitutes "other paper," however, has been developed judicially. See, e.g., Addo v. Globe Life & Accident Ins. Co., 230 F.3d 759, 761-62 (5th Cir. 2000) (settlement offers); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996) (deposition testimony); Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998) (interrogatory responses); Williams v. Safeco Ins. Co., 74 F. Supp. 2d 925, 929 (W.D. Mo. 1999) (demand letters); and Callahan v. Countrywide Home Loans, Inc., No. 3:06-105, 2006 WL 1776747, at *3-*4 (N.D. Fla. June 26, 2006) (email estimating damages). Although, courts have not articulated a single test for identifying "other paper."

Plaintiff relies on several documents as constituting "other paper." Specifically, Plaintiff relies on (1) the June 17, 2009 compromise package, (2) a response letter from Plaintiff to Defendants on March 23, 2010, agreeing to Defendants' request for an extension of time and referring Defendants to Plaintiff's investigative file, (3) an additional letter sent to Plaintiff from Defendants on April 26, 2010, acknowledging receipt of the insurance adjuster's investigative file and Plaintiff's $650,000 demand, and (4) a letter from Defendants on June 9, 2010, acknowledging receipt of Plaintiff's "bottom-line" settlement demand of $180,000. Thus, the question before the Court is whether any or all of these documents constitute "other paper" as intended by Section 1446(b).

*1. June 17, 2009 Compromise Package*

The Fifth Circuit's decision in Chapman is again controlling in this instance. In Chapman, the Fifth Circuit discussed the "other paper" language of Section 1446(b) and held that the plaintiff could not rely on *pre-suit* documents as "other paper" for the purposes of commencing the removal clock. 969 F.2d at 164. The court found that the plain language of

9

Section 1446(b) means that if "'other paper' is to start the thirty-day time period, a defendant must receive the 'other paper' after receiving the initial pleading." Id. at 164. Here, Plaintiff did not file suit until around eight months after sending Defendants' insurance adjuster his settlement package. Therefore, this compromise package does not constitute "other paper."

*2. March 23, 2010 Letter from Plaintiff to Defendants*

On March 22, 2010, Defendants sent Plaintiff a letter requesting an extension of time to file responsive pleadings in order that the parties may discuss the prospect of settlement. Plaintiff contends that his March 23, 2010 response letter sent to Defendants constitutes "other paper" since it is after the filing of the Complaint, and it is, "in effect, a renewal of Plaintiff's pre-suit $650,000 settlement demand." In this response letter, Plaintiff specifically informed Defendants that the insurance adjuster's investigative file "should contain all the information [] need[ed] to evaluate this case." While the Court agrees that this letter may have "in effect" renewed Plaintiff's settlement demand, this letter is not sufficiently clear and specific as to the amount of damages so as to commence the running of the removal clock. The Fifth Circuit requires that "the information supporting removal in . . . other paper . . . must be unequivocally clear and certain to start the time limit running for a notice of removal under the second paragraph of section 1446(b)." Bosky, 288 F.3d at 211. This email, which is void of a specific damages amount, does not satisfy this standard as it merely references the fact that a settlement package had been previously provided. For that reason, this letter did not prompt the running of the removal clock.

*3. April 26, 2010 Letter from Defendants to Plaintiff*

Plaintiff next asserts that the April 26, 2010 letter from Defendants' acknowledging receipt of Plaintiff's investigative file and Plaintiff's demand for $650,000 constitutes "other

paper" and conclusively demonstrates Defendants' knowledge of the amount of damages that Plaintiff is demanding in this case. The Court agrees.

In Addo v. Globe Life & Accident Ins. Co., 230 F.3d 759, 761-62 (5th Cir. 2000), the Fifth Circuit held that "a post-complaint letter, which is not plainly a sham,[3] may be 'other paper' under § 1446(b)." Id. The Fifth Circuit reasoned that its decision was "consistent with the purpose of the removal statute to encourage prompt resort to federal court when a defendant first learns that the plaintiff's demand exceeds the federal jurisdictional limit. Further, this holding discourages disingenuous pleading by plaintiffs in state court to avoid removal." Id. at 762. Even before the Addo decision, the majority of lower courts had already ruled that post-complaint settlement demand letters constitute "other paper." See, e.g., Stramel v. GE Capital Small Bus. Fin. Corp., 955 F. Supp. 65, 67 (E.D. Tex. 1997); Sunburst Bank v. Summit Acceptance Corp., 878 F. Supp. 77, 82 (S.D. Miss. 1995); Rodgers v. Nw. Mut. Life Ins. Co., 952 F. Supp. 325, 327 (W.D. Va. 1997). Likewise, decisions after Addo have followed suit. See, e.g., Lee v. Advanced Fresh Concepts Corp., 76 F. App'x 523, 524 (5th Cir. 2003) (unpublished) (the 30-day removal clock began to tick from the date of receipt of plaintiff's settlement demand letter, not the date the case was transferred to the district court); Fernando Garcia v. MVT Services, Inc., 589 F. Supp. 2d 797, 803 (W.D. Tex. 2008) (Defendant's receipt of demand letter from plaintiffs' attorney, offering to settle wrongful death case for $750,000, was receipt of "other paper" sufficient to establish, for removal purposes, that amount in controversy required for diversity jurisdiction was satisfied); see also LaPree v. Prudential Fin., 385 F. Supp. 2d 839, 849 (S.D. Iowa 2005);

---

[3] Defendants do not appear to ever argue that Plaintiff's settlement demand was a sham. However, the Court finds that there is no evidence to support such an argument even if it were made.

11

Efford v. Milam, 368 F. Supp. 2d 380, 385 (E.D. Pa. 2005); Vermande v. Hyundai Motor Am., Inc., 352 F. Supp. 2d 195, 200-01 (D. Conn. 2004); Hall v. Delta Air Lines, Inc., 340 F. Supp. 2d 596, 599 (D. Vi. 2004); Archer v. Kelly, 271 F. Supp. 2d 1320, 1322 (N.D. Okla. 2003); Martin v. Mentor Corp., 142 F. Supp. 2d 1346, 1349 (M.D. Fla. 2001); Jamison v. Kerr-McGee Corp., 151 F. Supp. 2d 742, 745 (S.D. Miss. 2001).

In the April 26, 2010 letter, Defendants' counsel explicitly acknowledged the fact that Plaintiff is demanding $650,000. Thus, it is clear that by this date – at the latest – Defendants were certain that Plaintiff's demand exceeded the federal jurisdictional limit. As noted in Addo, the purpose of the removal statute is to "encourage prompt resort to federal court." 230 F.3d at 762. Here, Defendants did not remove to federal court until July 15, 2010, almost three months after this letter. Accordingly, since the Court finds that Defendants' receipt of Plaintiff's post-complaint demand letter amounts to "other paper," the removal clock began to tick on April 26, 2010. Because Defendants did not remove this case within thirty days of that date, Defendants' removal was untimely and remand is warranted.[4]

C. Waiver

Since the Court has already concluded that remand is appropriate, there is no further need to address Plaintiff's argument that Defendants' waived the right to remove by defending this action in state court.

---

[4] The Court declines to address whether or not Defendants' June 9, 2010 letter acknowledging receipt of Plaintiff's bottom-line settlement demand of $180,000 also constitutes "other paper."

## IV. CONCLUSION

For the reasons stated above, Defendants have failed to timely remove this action. Thus, the Court grants Plaintiff's Motion to Remand.

So ordered on this, the _3rd__ day of December, 2010.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**